(21 App. Div. 570.)

BENDIX et al. v. AYERS et al.

(Supreme Court, Appellate Division, First Department. November 5, 1897.)

COMPROMISE — CONSIDERATION.
　　The payment in cash by one member of a firm, personally, after dissolution, of a portion of a co-partnership liability, constitutes a sufficient consideration for an agreement by the creditor to release him from the balance, and to look for its payment to the other partner only.

Appeal from trial term.

Action by Waldemar Bendix and another against Clinton P. Ayers and others. From a judgment on a verdict in favor of plaintiffs, as directed by the court, defendants appeal. Reversed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Gibson Putzel, for appellants.

Samuel Fleischman, for respondents.

INGRAHAM, J. The complaint alleges three causes of action, the first of which is to recover for a balance due from the defendant Pinkus to the plaintiffs on the 1st of January, 1893, of $633.81, which at that time the defendants, as co-partners under the firm name of Pinkus, Ayers & Co., promised and agreed to pay to the plaintiffs. The second cause of action was for goods sold and delivered in the month of March, 1893, upon which statement a balance was due from the defendants, as such co-partners, to the plaintiffs, of $12,781.92, of which has been paid the sum of $6,444.21, judgment being demanded for the balance. The third cause of action is to recover the same demand as is specified in the first and second causes of action from the firm of Pinkus, Ayers & Co., upon an account stated. The defendants Ayers and Wagner answered the complaint, alleging that they have no knowledge, or information sufficient to form a belief, as to the allegations contained in the complaint; denying the allegations contained in paragraph 4 of the first cause of action, and the allegations contained in paragraph 3 of the second cause of action. And for a separate and distinct defense the defendants alleged the formation of the co-partnership between the defendants on the 1st of January, 1893, and the transfer to the co-partnership of certain goods purchased by said Pinkus from the plaintiffs, and that the new co-partnership assumed the liability of Pinkus to the plaintiffs; that the plaintiffs sold to the defendants, as co-partners, the goods described in the second cause of action; that on the 18th of April, 1893, the co-partnership of Pinkus, Ayers & Co. was dissolved by mutual consent, the agreement of dissolution providing that the stock of linens belonging to the said firm was to be transferred to the defendant Pinkus, the said Pinkus to pay the purchase price of such goods to the creditors of the firm of Pinkus, Ayers & Co., including the plaintiffs; that subsequently, and about May 27, 1893, an agreement was entered into by the plaintiffs whereby the plaintiffs agreed to release the firm of Pinkus, Ayers & Co. and the defendants Ayers and Wagner of and from liability of said firm and of the said Ayers and Wagner on the debt due by the said firm of Pinkus, Ayers & Co. to the plaintiffs, upon payment by the said defendants Ayers and Wagner of the sum of $6,444.21, and that upon the payment of that sum the plaintiffs would release the said defendants Ayers and Wagner from the balance due on said account between the plaintiffs and the firm of Pinkus, Ayers & Co., and would hold said Pinkus personally for the balance; that said Ayers and Wagner paid such sum of $6,444.21; and that thereby the defendants Ayers and Wagner were duly released and discharged from liability to the plaintiffs. The amount due to the plaintiffs from the firm of Pinkus, Ayers & Co. having been admitted by the answer, the plaintiffs proved the co-partnership of the defendants, and then rested. The defendants then, to support the defense set up in the answer, proved the receipt by the plaintiffs of a notice of dissolution of the firm of Pinkus, Ayers & Co., by a letter dated at New York, April 24, 1893, which was received by the plaintiffs in the beginning of May. The

defendants then offered in evidence a letter from the plaintiffs to the defendants Ayers and Wagner, dated May 29, 1893. This letter was objected to by the plaintiffs as immaterial, irrelevant, and incompetent, and not embraced within the issues in the pleadings. That objection was sustained, and the defendants excepted. That letter is a part of the record, and recites the receipt of a cable from the defendants which reads, "Will pay Bendix half with sixty-day note, if released for balance, and goods remain in our possession," and continues:

"In reference to this cable, we will agree to the proposal made by Mr. Leopold Pinkus to settle the balance of our account according to statement sent with letter of May 17th, showing to our favor a balance for marks 53,428.45 for June 1st, 1893, as follows: We draw on you for marks 26,714.22 a 4.18 & 2 Mks. Interest, Dolls. 6,444.21, first of exchange per July 31st, 1893, payable at Messrs. Freund, Foise & Co.; New York, 13 & 15 White street. After this draft will be promptly paid when due, we release you fully for the balance of our acct., and will keep for it only Mr. Leopold Pinkus responsible, with whom we will settle this marks 26,714.23. We mailed the draft to-day, and beg you to accept the same kindly when presented."

The defendant Wagner was then called as a witness, and was asked the question: "(Paper shown witness.) This bill of exchange was drawn on you by Waldemar Bendix, the plaintiff?" This question was objected to as immaterial, irrelevant, and incompetent, and as not embraced within the issues. That objection was sustained, and the defendants excepted.

We have thus the defense alleged in the answer that after the dissolution of the firm, which was indebted to the plaintiffs in the amount alleged in the complaint, and to recover for which the action was brought, there was an agreement whereby the property of the co-partnership was to be transferred to Pinkus, and Pinkus was to pay the co-partnership indebtedness. Knowledge of the dissolution and of this agreement was communicated to the plaintiffs, and an agreement was entered into between the plaintiffs and these defendants and Pinkus by which the plaintiffs were to accept one-half of the amount due from the dissolved firm to the plaintiffs in cash from these appellants, and an agreement by the plaintiffs to release these appellants for the balance of the account, holding Pinkus, as successor in business of the firm of which the defendants were members, for the other one-half of such balance; and to prove that agreement the defendants offered in evidence a letter from the plaintiffs containing such agreement on their part, and offered evidence tending to show the payment of the amount required to be paid under the agreement, which agreement and evidence were excluded by the court. In the state of the record, it is quite apparent that evidence competent to show the agreement between the plaintiffs and these defendants was excluded by the court; and if the defense set up in the answer was a good defense if proved, and the court refused to receive evidence offered by the defendants which tended to prove such defense, such error requires a new trial. It would be putting the defendants in an unfair position to hold that where the court had excluded competent evidence to show an agreement which, if proved, would have defeated the plaintiffs' cause of action, and also refused to allow the defendants to prove

facts which would tend to show that such agreement had been carried out by the defendants, the defendants were bound to go on and prove, or offer to prove, all the facts showing the performance of the agreement which the court had held was not a defense to the cause of action alleged.

We have first to determine whether or not the facts alleged in the answer were a defense to the cause of action, as against these two defendants. While the answer is not skillfully drawn, it is not difficult to ascertain what it was intended to allege as a defense. The third cause of action was against all of the defendants, as members of a co-partnership. That co-partnership had been dissolved under an agreement by which the defendant Pinkus was to pay the amount due plaintiffs, and the defendants Ayers and Wagner were, as between the individual members of the co-partnership, sureties for the payment by Pinkus of the amount due to the plaintiffs. The cause of action being against the members of the firm, the firm property was primarily liable for the payment of the debts of the firm; its members being individually liable for any deficiency after the application of the firm's property to the payment of its debts. This being the situation, the agreement between these defendants and the plaintiffs provided that, if these appellants should pay to the plaintiffs the sum of $6,444.21, the plaintiffs would release them from liability for the payment of the balance due on account between the plaintiffs and the said co-partnership, and would hold Pinkus personally for the balance, that thereupon these defendants did pay the said sum of $6,444.21, and that by such payment and acceptance these defendants were released and discharged of and from liability to the plaintiffs. The question here is not as to whether such a release of the two members of the firm (the appellants) operated to release Pinkus as a joint debtor, but whether such an agreement, fully executed, operated to release these appellants from the payment of the balance of the indebtedness. We think that such an agreement between two members of a co-partnership, whereby such two members individually paid a portion of the firm debt on condition of their being released from liability for the remainder of the debt, was a valid agreement, founded upon a good consideration. The rule of the common law, that payment by a debtor of a portion of a conceded indebtedness is not a sufficient consideration to support an agreement by the creditor to release the balance of the debt, has been much criticised by learned judges and text writers, as extremely technical and not well supported by reason. It is, however, applied in cases coming strictly within the rule. The tendency of the courts has been to apply this rule only when the facts bring the case clearly within the principle stated. Where the creditor gets any other advantage besides that of a part payment by the original debtor, who is principally liable for the debt, the courts have held that such an advantage to the creditor is a consideration sufficient to support the promise to release the balance of the debt. The court of appeals, in two well-considered cases, has held that:

"The case accepting the sole liability of one of two joint debtors or co-partners in satisfaction of a joint or co-partnership debt is an illustration. This is held to be a good satisfaction, because the sole liability of any of two debtors

may be more beneficial than the joint liability of both, either in respect to the solvency of the parties, or the convenience of the remedy." Allison v. Abendroth, 108 N. Y. 470, 15 N. E. 606; Luddington v. Bell, 77 N. Y. 138.

In the latter case it was held:

"That the acceptance by a creditor of the individual note of one of the members of a co-partnership, after dissolution, for a portion of the co-partnership debt, was a good consideration for the creditor's agreement to discharge the maker from further liability."

Under the authority of these two cases, it is clear that if the pleader had alleged the exact facts in the answer, viz. the making of the agreement, and the acceptance of a draft by these two defendants for the amount which they were to pay in satisfaction of the plaintiffs' claim against them individually, a good defense would have been alleged. It is difficult to conceive why the giving of a note for the payment of a portion of an indebtedness is a greater advantage to the creditor than the actual payment by the debtor, or a person contingently liable for the payment of a portion of such indebtedness. The acceptance of a note of the debtor by the creditor is certainly not as advantageous to the creditor as the acceptance of the actual money by the creditor. By such a payment the creditor receives a portion of his demand from one of the debtors, when he would not be entitled to sue such debtor without joining the other joint debtor, and could not enforce his judgment against the individual property of his debtors until he had exhausted the joint property. As was said by the court of appeals in Luddington v. Bell, supra, in speaking of an obligation that one co-partner received in discharge of a co-partnership indebtedness:

"An individual obligation may be a higher security than that of a co-partnership, and a debt due from partners may not always be as substantial and safe as a debt against one of them; for such co-partnership debt must be first collected out of the co-partnership assets, and not out of the individual property of the several partners, until these are exhausted, and then only after the individual debts are fully paid. Take the case of an individual who has assets out of which a debt may be collected. It is easy to see that the chance of collection would be far better against one of a firm than against a co-partnership which had met with losses, and was not in a condition to meet its pecuniary obligations."

Applying what was said to the case at bar, it seems quite clear that a payment by an individual co-partner, out of his own property, of a debt due from partners, may be a substantial advantage to the creditor, as the creditor, to collect his debts, must first proceed against the co-partnership property, and the individual property of the co-partners would only be liable to pay the co-partnership debts after the individual debts of the co-partnership had been paid. As was said by the court of appeals in Allison v. Abendroth, supra:

"The rule of the common law is technical, and not well supported in reason, but it has been steadily maintained by the courts in cases coming strictly within it. But it is held that where there is an independent consideration, or the creditor receives any benefit, or is put in a better position, or one from which there may be legal possibility of benefit to which he was not entitled, except for the agreement, then the agreement is not nudum pactum, and the doctrine of the common law to which we have adverted has no application. * * * Following the same principle, it is held that, when the debtor enters into a new contract with the creditor to do something which he was not bound to do by the original contract, the new contract is a good accord and satisfaction, if so agreed. The case of accepting the sole liability of one of two joint debtors or

co-partners in satisfaction of the joint or co-partnership debt is an illustration. This is held to be a good satisfaction, because the sole liability of one of the two debtors may be more beneficial than the joint liability of both, either in respect of the solvency of the parties, or the convenience of the remedy."

The facts, as alleged in the answer, are clearly within the principle thus established. The payment by these two defendants of a sum of money, without compelling the plaintiffs to resort to their legal proceedings against the co-partnership, and exhausting their remedy as against the co-partnership property, is clearly an advantage to the creditor which is sufficient to sustain this agreement which released the co-partners making such payment; and we see no reason why this agreement, being based upon a valid consideration, and having been fully executed, should not be enforced, and why these defendants were not thereby discharged. It clearly appears from the record that the court excluded all evidence of the facts alleged in the answer, on the ground that the facts alleged did not constitute a defense. Upon no other principle could the letter of the plaintiffs to the defendants, accepting the proposed payment in full settlement of the plaintiffs' demand, have been rejected; and the refusal of the court to allow the defendants to testify that a bill of exchange was drawn on one of these defendants by the plaintiffs was a refusal to allow evidence of the method by which the payment provided for by the agreement had been made. We think the defense set up in the answer is a good defense, and that the action of the court in refusing to allow the defendants to prove the facts which establish such defense was error.

The respondents insist that as the complaint alleges that on or about June 1, 1893, an amount was stated between the plaintiffs and the defendants, upon which a balance was found due of $12,-781.92, which allegation is not denied in the answer, and as the agreement is stated to have been made on or about May 27, 1893, such agreement could not have released a debt which existed on June 1, 1893. The answer does not purport to state when this agreement of May 27, 1893, was fully carried out, so as to have been an executed agreement, and thus to have operated to release the indebtedness. It might well be that an indebtedness had existed on June 1st which was subsequently satisfied by the execution of the agreement made May 27th, and which was not fully executed until after June 1st. Nor is the date of the agreement by which these appellants agreed to pay the sum proposed to be paid to the plaintiffs to release them individually stated in the answer. May 27, 1893, is the date upon which it is alleged that Pinkus entered into an agreement with the plaintiffs, and the answer then alleges that thereupon the plaintiffs agreed with the defendants Ayers and Wagner that if the said defendants would pay the said sum of $6,444.-21, due the plaintiffs, then they, the said plaintiffs, would release the said defendants, Ayers and Wagner, from the balance due on the said account between the plaintiffs and the said firm of Pinkus, Ayers & Co., and would hold the said Pinkus personally for the balance; that thereupon Ayers and Wagner agreed to pay, and did pay, the said sum of $6,444.21, and were thereby duly released and dis-

charged of and from liability to the said plaintiffs.    There is nothing in this allegation to show that this agreement became an executed agreement, and thus an accord and satisfaction, prior to the 1st of June, 1893, at which time it is alleged that the account between the plaintiffs and the co-partnership was stated.

It follows that the judgment must be reversed, and a new trial ordered, with costs to the appellants to abide the result.    All concur.